IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAY WESTALL OPERATING, INC.,
DONNIE MATHEWS, JAMES R. MALONEY,
RAY WESTALL, and KAREN WESTALL,

       Plaintiffs,

vs.                                          No. CV 20-302 KG/GJF

STEPHANIE GARCIA RICHARD, *individually and
in her official capacity as New Mexico Commissioner
of Public Lands*, and AUBREY DUNN, JR., *individually*,

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Ray Westall Operating, Inc. (RWO), is "in the salt-water and produced water

disposal business in the oil and gas industry."  (Doc. 8) at 4.  Plaintiffs Ray and Karen Westall

are the sole shareholders of RWO.  *Id.*  In pertinent part, RWO operates disposal wells on New

Mexico state trust land under the control of New Mexico State Land Office Commissioner,

Defendant Stephanie Garcia Richard, and former Commissioner, Defendant Aubrey Dunn, Jr.

*Id.* at 5.  The Westalls, along with Plaintiffs James Maloney and Donnie Mathews, "own[]

varying percentage operating interests" in the salt-water wells that RWO operates.  *Id.* at 4.

Plaintiffs filed this lawsuit claiming that Commissioner Richard and former

Commissioner Dunn failed to issue or renew specific easements and rights-of-way on New

Mexico state trust land.  *Id.* at 2-34.  Plaintiffs allege that the Commissioners' denial of their

land-use applications hindered their ability to operate their salt-water disposal wells and resulted

in millions of dollars in lost revenue.  *Id.* In their Complaint, Plaintiffs assert claims for

"impairment of contracts," violations of the equal protection clause under the 14th Amendment,

"condition of association and/or surrender of rights," and "retaliation."  *Id.* at 35-45.  Plaintiffs

seek actual and punitive damages, and injunctive relief.  *Id.* at 49-55.

Presently before the Court are Commissioner Richard and former Commissioner Dunn's

Motions for Judgment on the Pleadings (Motions) (Docs. 21, 32).  The Motions are now fully

and timely briefed.  *See* (Docs. 30, 37, Responses, and Docs. 35, 38, Replies).  The Court notes

jurisdiction under 28 U.S.C. § 1331, as an action arising under 42 U.S.C. § 1983.  Having

considered the parties' briefing, the record, and the relevant law, the Court grants in part and

denies in part Commissioner Richard's Motion (Doc. 21), and grants in part and denies in part

former Commissioner Dunn's Motion (Doc. 32).

I.      *Procedural Posture*

Plaintiffs allege that in July 2017, Ray Westall, serving as the operator of a fresh-water

well company, Loco Hills Water Solutions, LLC (Loco Hills), "developed a disagreement" with

then-Commissioner Dunn.  (Doc. 8) at 9.  Plaintiffs assert that despite Loco Hills and

Commissioner Dunn's amicable business relationship, a dispute developed regarding the

"percentage of its water sales (i.e., royalties) under three [of Loco Hills'] water easements."  *Id.*

Commissioner Dunn alleged that Ray Westall, as owner of Loco Hills, owed over $1 million in

unpaid royalties to the New Mexico State Land Office.  *Id.* at 10.

As a result of the parties' disagreement and the alleged Loco Hills' royalty debt,

Commissioner Dunn "stopped issuing any renewal or new easements or rights-of-way" to Ray

Westall.  *Id.* at 11.  Plaintiffs allege that Commissioner Dunn effectively "blacklisted all entities

affiliated with Ray Westall," including, for purposes of this lawsuit, his salt-water disposal well

company, RWO.  *Id.*  Specifically, Plaintiffs assert that Commissioner Dunn, and subsequently

Commissioner Richard, refused to renew four easements, and denied without explanation several

new applications for easements and rights-of-way because of Ray Westall and Loco Hills outstanding debt.  *Id.* at 16-23.  Plaintiffs allege their inability to renew the existing easements and lease new land rights irreparably harmed RWO's business interests.  *Id.* at 23-31.  In essence, Plaintiffs rely on the lease of New Mexico state trust land to effectively operate their business, and over the last several years, they built expensive and costly infrastructure to support their business enterprise on state land.  *Id.*

Importantly, Plaintiffs assert that they paid all legally obligated royalties to the New Mexico State Land Office and, thus, the Commissioners' claims of non-payment are erroneous. *Id.* at 10.  In support of this assertion, RWO and Loco Hills filed suit against former Commissioner Dunn in New Mexico State District Court.  *Id.* (explaining that "Loco Hills disputed the demanded sums, in part, because Loco Hills believed the charges violated the equal protection clause and due process").   The State Court case remains pending in Lea County, but all claims asserted by RWO and Loco Hills have been dismissed.  *Id.*  The only claims remaining in the State Court lawsuit are the counterclaims asserted by the New Mexico State Land Office, claiming entitlement to the past-due royalties.  *Id.* (explaining that State Court lawsuit "is proceeding on the counter-claims filed by the [New Mexico State Land Office] against Loco Hills for the royalties allegedly owed under the water easements").

Given this procedural posture, both Commissioner Richard and former Commissioner Dunn filed Motions in the instant case, asserting, among other defenses, qualified immunity. (Docs. 21, 32).  Specifically, Commissioner Richard asserts that she is entitled to qualified immunity on Plaintiffs' claims for damages, asserted against her in her individual capacity. (Doc. 21) at 7-20; (Doc. 35) at 12.  Similarly, former Commissioner Dunn claims that he is entitled to qualified immunity on all of Plaintiffs' claims.  (Doc. 32) at 11-13.  On August 20,

2020, the Commissioners jointly filed an unopposed Motion to Stay Proceedings.  (Doc. 28).
The case was subsequently stayed pending this Court's resolution of the Commissioners'
Motions.  (Doc. 29).

  *II.* *Standard*

   Motions for judgment on the pleadings are governed by Federal Rule of Civil Procedure
12(c).  Procedurally, a motion under Rule 12(c) is "treated as a motion to dismiss under Rule
12(b)(6)."  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir.
2000).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to state a claim to relief that is plausible on its face."  *Emps.' Ret. Sys. of R.I. v.
Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (citation omitted); *accord Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009) (explaining that to survive dismissal, complaint must "state a
claim to relief that is plausible on its face").  "A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged."  *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792
(10th Cir. 2013) (citation omitted).

   In making this plausibility assessment, courts "accept as true 'all well-pleaded factual
allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'"
*Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (citation omitted).  As a result, a
court "may not dismiss on the ground that it appears unlikely the allegations can be proven."
*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).  "[T]he degree of specificity
necessary to establish plausibility and fair notice, and therefore the need to include sufficient
factual allegations, depends on context."  *Id.* at 1248.  Accordingly, a court should conduct its
plausibility and sufficiency analyses on a case-by-case basis.  *See id.* at 1248-49 (explaining that

complaint alleging negligence may require less factual support than conspiracy or qualified immunity action).

In evaluating a qualified immunity defense in the context of a motion to dismiss, courts "must determine whether the plaintiff pled facts indicating: (1) the defendant violated a statutory or constitutional right and (2) that right was 'clearly established' at the time of the challenged conduct." *Crall v. Wilson*, 769 Fed. Appx. 573, 575 (10th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  Courts "may address the two prongs of the qualified immunity analysis in either order:  '[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense.'"  *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019), *cert. denied sub nom. Cummings v. Bussey*, 140 S. Ct. 81 (2019) (quoting *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016), *cert. denied*, 137 S.Ct. 2151 (2017)).

III.     *Discussion*

Plaintiffs assert that they "pleaded at least five (5) different claims."  (Doc. 30) at 3.  In liberally construing Plaintiffs' Complaint and subsequent briefing, Plaintiffs allege: (1) "impairment of contracts;" (2) "class-based" and "class-of-one" discrimination under the equal protection clause; (3) infringement on their right to association; (4) retaliation; and (5) "unconstitutional conditions."  *See* (Doc. 8) at 34-53; (Doc. 30); (Doc. 37).  Both Commissioner Richard and former Commissioner Dunn assert that they are entitled to judgment on each of Plaintiffs' claims.  (Doc. 21); (Doc. 32); (Doc. 35); (Doc. 38).  Accordingly, the Court will address Plaintiffs' claims in turn.

A.   *Impairment of Contracts*

As a preliminary matter, Plaintiffs' Complaint alleges a claim for the "illegal impairments of contracts."  (Doc. 8) at 44.  Specifically, the Complaint asserts that Defendants "disrupted [their] reasonable expectations pertaining to [the easements] and their business and [their actions resulted in the] … illegal impairments of contracts."  *Id.* at 45.  The Commissioners both moved for judgment in their favor on this claim, arguing that such a claim may only be premised on the State's impairment of a contract through the subsequent passage of a law or the retroactive codification of a statute.  *See* (Doc. 32) at 10 (citing *inter alia Smith v. City of Enid by and through Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998)).  In response to the Commissioners' present Motions, Plaintiffs now allege that their contractual impairment claim is "asserted in connection with the requested injunctive relief against the '[S]tate,'" *e.g.*, against Commissioner Richard in her official capacity.  (Doc. 37) at 22.  Accordingly, Plaintiffs waive any assertion of the claim against either Commissioner in their individual capacities.  *Id.* (explaining that "Court need not decide whether an impairment claim exists, since Plaintiffs did not plead the claim against [Commissioners] personally, and the case is stayed on all issues other than qualified immunity").

Presently, Commissioner Richard requests judgment only with respect to those claims asserted against her in her individual capacity for monetary damages.  (Doc. 21) at 1 (arguing that "[q]ualified immunity bars Plaintiffs' suit to the extent they seek damages from the Commissioner").  Any claims against the "State," or Commissioner Richard in her official capacity, are not at issue in the Commissioners' Motions and, thus, not presently before the Court.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (explaining that "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").  Therefore,

because Plaintiffs now contend there is no contractual claim asserted against either Commissioner in their individual capacities, this claim shall remain pending against Commissioner Richard solely in her official capacity.  *See* (Doc. 35) at 11, n.15 (agreeing that "Plaintiffs appear to have dropped their claim that the Commissioner impaired their rights under the Contracts Clause"); (Doc. 38) at 11 (same).

### B.  Fourteenth Amendment "Class-Based" and "Class-of-One" Discrimination

Next, both Commissioner Richard and former Commissioner Dunn request judgment on Plaintiffs' "class-based" and "class-of-one" discrimination claims.  (Doc. 21) at 12-17; (Doc. 32) at 3-8.  The Fourteenth Amendment of the United States Constitution prohibits a State from denying "any person within its jurisdiction the equal protection of the laws."  Const. Amend. XIV § 1.  When a State action classifies individuals "by race, alienage, or national origin," or "impinge[s] on personal rights protected by the Constitution," it is subject to "strict scrutiny and will be sustained only if [the action is] suitably tailored to serve a compelling [S]tate interest." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (articulating standard for class-based discrimination).

Absent conduct targeting a suspect class or infringing on personal rights, however, a State action "is presumed to be valid."  *Id.* (collecting cases).  In this circumstance, a State action survives judicial review "if there is 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  *Davoll v. Webb*, 194 F.3d 1116, 1145 (10th Cir. 1999) (citing *Spragens v. Shalala*, 36 F.3d 947, 951 n.3 (10th Cir. 1994)).  A court "will only strike the [action] down if the [S]tate's classification 'rests on grounds wholly irrelevant to the achievement of the State's objective.'"  *City of Herriman v. Bell*, 590 F.3d 1176, 1194 (10th Cir. 2010).

7

Alternatively, a plaintiff may plead a "class-of-one" equal protection claim under the Fourteenth Amendment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Like recovery for class-based discrimination, a plaintiff must demonstrate that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* Under both theories of recovery, the plaintiff must demonstrate that the State's action was unrelated to any rational interest. *See id.* (explaining that "purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within a State's jurisdiction against intentional and arbitrary discrimination"); *see also Bell*, 590 F.3d at 1194 (holding that State action is unconstitutional if it "rests on grounds wholly irrelevant to the achievement of the State's objective.") (internal citation omitted).

The Tenth Circuit explained that it is a "perplexing situation … when the rational basis standard meets the standard applied to a dismissal." *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 459-60 (7th Cir. 1992)). In adopting the framework applied by the Seventh Circuit, the Tenth Circuit instructed that lower courts should "take as true all of the complaint's allegations and reasonable inferences that follow" and "apply the resulting 'facts' in light of the deferential rational basis standard." *Id.* (citing *Wroblewski*, 965 F.2d at 460). Thus, the Tenth Circuit opined, "[t]o survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Id.*

Here, Plaintiffs allege equal protection violations under both class-of-one and class-based discrimination theories. *See* (Doc. 8) at 35; (Doc. 37) at 4. Specifically, Plaintiffs assert that the Commissioners refused to grant or extend their rights on state trust land because a separate entity, also owned in part by Ray Westall, allegedly failed to pay its required royalties. (Doc.

37) at 6-7 (arguing that Commissioners "refused to do business with RWO and the other

Plaintiffs because another entity [] refused to pay the royalty charges that [] Ray Westall

contended were unconstitutional").  Plaintiffs contend that despite the Commissioners' refusal to

conduct business with them, they "issued similarly-situated parties' easements and rights-of-way

for water disposal in the very same area in Eddy County … including several of RWO's

competitors."  *Id.* at 12.  Plaintiffs allege that Commissioner Richard and former Commissioner

Dunn's "disparate treatment" for the issuance of land-use rights lacked a rational basis.  (Doc.

30) at 7; (Doc. 37) at 11-12.  As a result, Plaintiffs assert that the Commissioners' conduct

violated the Fourteenth Amendment.  (Doc. 8) at 35.

 Importantly, the State "has no obligation to produce evidence to sustain the rationality of

[its] classification."  *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993).  Rather, "the burden is on

the one attacking the [State action] to negative every conceivable basis which might support it …

whether or not the basis has a foundation in the record."  *Id.* at 320-21 (internal citations and

punctuation omitted).  Nevertheless, the Commissioners proffer that their objective in protecting

state trust land and ensuring payment from lessees is rationally related to their decision to deny

Plaintiffs' renewal and easement applications.  *See* (Doc. 35) at 8.

 Specifically, Commissioner Richard explains that she maintains discretion to issue and

renew easements, consistent with New Mexico State Land Office regulations.  (Doc. 21) at 7

(citing NMAC § 19.2.11.9) (promulgating that "lands available for disposal site easements" are

"subject to the commissioner's right to exercise the commissioner's discretion").  Furthermore,

Commissioner Richard posits that, in determining whether to renew or grant an easement, she

"reserves the right to refuse to grant an easement when to do so would be detrimental to the

trust."  *Id.* (citing NMAC § 19.2.11.9(B)).  Therefore, Commissioner Richard asserts, "[i]t is not

irrational for the State Land Office, under either Commissioner [] Richard or former Commissioner Dunn, to decline to enter into new contracts with an entity whose principal has failed and refused (through a different company he controls) to honor prior contractual commitments."  (Doc. 35) at 8.

The Commissioners, and the New Mexico State Land Office generally, have a legitimate interest in maintaining a lessee program that generates revenue to support its mission.  *See Heller*, 509 U.S. at 323 (explaining that to survive rational basis review, there must merely be "reasonably conceivable state of facts" that supports State's objective).  Denying RWO's request to lease state trust land, after one of its stakeholders failed to pay other accounts, was rationally related to the Commissioners' codified interests of maintaining the state trust.  *See Bell*, 590 F.3d at 1194 (explaining that court should only strike down State action if it "rests on grounds wholly irrelevant to the achievement of the State's objective").  As a result, Commissioner Richard and former Commissioner Dunn's discretionary decision to deny lease rights to Plaintiffs did not violate the Fourteenth Amendment.[1]

Because Plaintiffs do not allege facts that plausibly support conduct violative of the equal protection clause, the Commissioners are entitled to qualified immunity on these claims.  *See Crall*, 769 Fed. Appx. at 575 (explaining that plaintiff must prove defendants violated "statutory or constitutional right" to overcome affirmative defense of qualified immunity).  Notably, the Court need not decide the second prong of the qualified immunity analysis because Plaintiffs must succeed on both prongs to overcome the Commissioners' entitlement to this affirmative defense.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (explaining that court may exercise

---

[1].    Notably, the State Court concluded that the Commissioners are afforded considerable discretion in their decision making, and, thus, likewise granted judgment for the Commissioners on Plaintiffs' state court claims for equal protection.  (Doc. 42) at 4-8.

its discretion in deciding which prong to analyze first).  Plaintiffs' failure to overcome the first

prong, thus, ends the Court's inquiry.  *See Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004)

(concluding that "if a plaintiff fails to demonstrate that a defendant's conduct violated the law,

the court need not determine whether the law was clearly established").  For these reasons, the

Court grants judgment on the pleadings in favor of Commissioner Richard and former

Commissioner Dunn on Plaintiffs' class-based and class-of-one equal protection claims.

     *C. Right to Association*

     Next, in their Motions, the Commissioners seek judgment on Plaintiffs' right to

association claims.  *See* (Doc. 21); (Doc. 32).  The Commissioners explain that "the precise

contours of [Plaintiffs' right to association] theories are not entirely clear."  (Doc. 32) at 9; *see*

*also* (Doc. 38) at 11 (explaining that "Plaintiffs' 'right to association' claim is actually what

Defendant *thought* plaintiffs' 'unconstitutional conditions' claim was") (emphasis in original).

The Commissioners argue that while the Plaintiffs' association claims are not specifically

delineated in their Complaint, the claims, nevertheless, "appear [not] viable."  (Doc. 32) at 9; *see*

*also* (Doc. 35) at 10, 12 (arguing that Plaintiffs present "grab bag of miscellaneous legal

theories" and "Plaintiffs' claims for damages against her [should be] dismissed in their

entirety").

     The Court agrees that Plaintiffs' Complaint does not assert a stand-alone "right to

association" claim.  *See* (Doc. 8) at 33 ("III. Causes of Action").  Rather, Plaintiffs' 57-page

Complaint asserts a "right to association" on seven different occasions, at each point, under the

auspices of other causes of action.  *Id.* at 33-45 (listing claims of "Equal Protection Violations …

Unconstitutional Conditions of Association and/or Surrender of Rights … Unconstitutional

Retaliation … [and] Impairment of Contracts").  For example, under the heading that lists "Equal

Protection Violations," Plaintiffs assert that "[t]he Commissioners intentionally discriminated against RWO and/or Plaintiffs due to their association with Ray Westall and/or Loco Hills." *Id.* at 37. Similarly, under the heading styled "Unconstitutional Condition of Association and/or Surrender of Rights," Plaintiffs proffer that "the unconstitutional conditions doctrine applies particularly to denial of governmental contracts based on association." *Id.* at 40-41.

Plaintiffs' passing mention of their "right to associate" under the pretext of other, specifically pled, causes of action is insufficient to state a claim that survives the Rule 12(c) standard. *See Robbins*, 519 F.3d at 1248 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)) (finding complaint insufficient where "defendant seeking to respond to plaintiffs' conclusory allegations … would have little idea where to begin"). Indeed, neither Commissioner was apprised of this claim until Plaintiffs' Responses, in which Plaintiffs explained, for the first time, their intent to plead a First Amendment right to associate. *See* (Doc. 35); (Doc. 38). The Court notes the problematic assumptions that plague a lawsuit which fails to specifically ascertain the charges against each defendant. *See e.g.*, *Robbins*, 519 F.3d at 1248 (explaining that complaint's "requirement of plausibility serves … to inform the defendants of the actual grounds of the claim[s]"). At a minimum, the Commissioners have a right to understand what charges are being levied against them. *See* Fed. R. Civ. P. 8(a)(2) (directing that complaint contain "short and plain statement of the claim showing that the pleader is entitled to relief."); *see also Robbins*, 519 F.3d at 1248 (citing *Twombly*, 550 U.S. at 555) (opining that complaint "satisfy the requirement of providing … 'fair notice' of the nature of the claim[s]").

Even if the Court were to construe Plaintiffs' Complaint as articulating a violation of their First Amendment right to associate, Plaintiffs have failed to proffer a consistent theory of recovery. Specifically, the United States Supreme Court has recognized "two distinct senses" of

constitutionally protected "freedom of association." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617 (1984). The first subset involves an individual's right to "enter into and maintain certain intimate human relationships." *Id.* at 618 ("freedom of intimate association"). The second subset involves "a right to associate for the purposes of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* ("freedom of expressive association"). Under the later theory, an individual has a "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id.* at 622.

Seemingly, Plaintiffs first attempted to proffer claims alleging conduct violative of their right to intimately associate, but then morphed their claim into one asserting a right to expressive association. *Compare* (Doc. 8) at 42 (asserting "Plaintiffs' constitutionally protected right to associate with Loco Hills and/or Ray Westall") *with* (Doc. 30) at 22 (arguing "Plaintiffs have a First Amendment constitutional right to [associate for the purpose of] 'petition[ing] the government' and blacklisting is in derogation of these rights and policies because it punishes citizens for seeking judicial resolution of their legitimate disputes with the government"). Plaintiffs' shifting definition of their cause of action strips the Commissioners of their ability to adequately prepare their defense, or otherwise meaningfully participate in this lawsuit. *See Robbins*, 519 F.3d at 1250 (collecting cases) (dismissing claims where "it is impossible for any of the[] individuals to ascertain what particular unconstitutional acts they are alleged to have committed"); *see also Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 550 (10th Cir. 1997) (explaining that pleading deficiencies cannot be overcome by "arguments that extend beyond the allegations contained in the complaint"). The shifting framework under which Plaintiffs allege a constitutional violation, in conjunction with the "greater likelihood of failures

in notice and plausibility" standards that accompany Section 1983 cases, renders Plaintiffs' claims insufficient.  *See Robbins*, 519 F.3d at 1249 (citing *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007)).

In sum, Plaintiffs initial failure to plead an enumerated claim alleging a violation of their First Amendment right to associate—coupled with their evolving explanation of what this claim entails—is insufficient to "make clear the grounds on which [they are] entitled to relief."  *See id.*  In a Section 1983 case especially, "it is particularly important … that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her."  *Id.* at 1250 (citing *Twombly*, 550 U.S. at 564-66) (emphasis in original).  Plaintiffs have failed to do this, and, thus, it is "impossible for the court to perform its function of determining … whether the asserted claim is clearly established."  *Id.* at 1249; *see also Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018) (holding that "[b]efore a court may undertake the proper [qualified immunity] analysis, the complaint must 'isolate the allegedly unconstitutional acts of each defendant'").  As a result, Defendants are entitled to judgment on the pleadings for any alleged violation of Plaintiffs' First Amendment right to associate.

### D.  Retaliation

Next, both Commissioner Richard and former Commissioner Dunn request judgment on Plaintiffs' First Amendment retaliation claims.  (Doc. 32) at 9-10; (Doc. 35) at 11.  To state a claim for retaliation under the First Amendment, a plaintiff must demonstrate that: (1) he "was engaged in constitutionally protected activity;" (2) "the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;" and (3) "the defendant's adverse action was substantially motivated as a response

to the plaintiff's exercise of constitutionally protected conduct."  *Shero*, 510 F.3d at 1203 (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

Plaintiffs allege they engaged in four "constitutionally protected activities" that serve as the basis for "four separate constitutional retaliation claim[s]" against the Commissioners.  (Doc. 30) at 12.  Specifically, Plaintiffs claim the following actions support the first element of their retaliation claims: (1) "Ray Westall refused to pay the royalties charged to Loco Hills on equal protection grounds;" (2) "RWO and/or Loco Hills … filed the State Court [a]ction seeking redress for constitutional violations;" (3) "RWO and/or Plaintiffs refuse to pay Loco Hills' alleged debt;" and (4) "Plaintiffs are associated with Ray Westall and/or Loco Hills."  (Doc. 8) at 44.

Plaintiffs do not explain how their refusal to pay "alleged debt[s]" or past-due "royalties" evidences a "constitutionally protected activity" for which they may recover for retaliation. Rather, constitutionally protected activity includes conduct enumerated or otherwise specifically protected by the United States Constitution. *See e.g.*, *inter alia* Const. Amend. I (delineating the rights to establishment of religion, freedom of speech, freedom of the press, "the right of the people peaceably to assemble, and to petition the Government for a redress of grievances"). Furthermore, the Court has already concluded that Plaintiffs have not pled valid claims under the Fourteenth Amendment equal protection clause or for a violation of their First Amendment right to associate.  *See supra* §§ (II)(B), (C).  Thus, from Plaintiffs' list of enumerated "constitutionally protected activities" upon which they base their current claim for retaliation, the only plausible constitutional basis proffered is the right to seek redress.  *See* (Doc. 8) at 44; (Doc. 30) at 11.

Indeed, the right to petition the government for redress of grievances is protected by the First Amendment. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (explaining that "right to petition is one of the freedoms protected by the Bill of Rights"). In practice, "a private citizen exercises a constitutionally protected First Amendment right anytime he or she petitions the government for redress; the petitioning clause of the First Amendment does not pick and choose its causes." *Van Deelen v. Johnson*, 497 F.3d 1151, 1156 (10th Cir. 2007). Plainly stated, a plaintiff has the right to file a lawsuit alleging government misconduct without fear of a retaliatory response. *See McDonald v. Smith*, 472 U.S. 479, 482 (1985) (defining right to "petition the Government for a redress of grievances"). Therefore, in alleging that the Westalls "filed the State Court [a]ction [against the Commissioners] seeking redress for constitutional violations," Plaintiffs plausibly set forth facts that they engaged in a "constitutionally protected activity" sufficient to facially support the first element of their retaliation claim. *See* (Doc. 8) at 44.

Next, to satisfy the second element of their retaliation claim, Plaintiffs must proffer facts to plausibly assert that the Commissioners' "actions caused … injury that would chill a person of ordinary firmness from continuing to engage in that activity." *See Shero*, 510 F.3d at 1203. The standard for evaluating the "chilling effect" of government conduct "is objective, rather than subjective." *Id.*; *see also Eaton*, 379 F.3d at 954 (concluding that "when the plaintiff alleges that the defendant's action was taken in retaliation … our standard for evaluating that chilling effect is objective, rather than subjective").

In support of the second element, Plaintiffs allege a financial loss of thousands of dollars, and in some instances, jeopardized expenditures and investments totaling over one million dollars. (Doc. 8) at 5 (explaining that Plaintiffs "invested over $35 million in capital

expenditures"); *id.* at 6 (alleging that "Plaintiffs additionally incurred over $10,000,000 before 2016"); *id.* at 12 (proffering that current dispute involves "$1.3 million allegedly owed"). Objectively, financial loss of this quantity would "chill an individual of ordinary firmness" from seeking redress.  *See Shero*, 510 F.3d at 1203 (explaining alleged harm must be more than "trivial or *de minimis* … [to] support a retaliatory [] claim").  Thus, Plaintiffs have proffered facts which, when taken as true, plausibly support satisfaction of the second element of their retaliation claim.

Finally, Plaintiffs must plausibly demonstrate that the Commissioners' "action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."  *See id.*  In their Complaint, Plaintiffs explain that "[i]n or around July of 2017, Loco Hills and Former Commissioner Dunn developed a disagreement."  (Doc. 8) at 9.  Then, "beginning in late 2017, Commissioner Dunn and the [New Mexico State Land Office] refused to issue any further easements or rights-of-way to RWO."  *Id.*  Around the same time, "[o]n October 12, 2017, RWO and Loco Hills filed suit against Former Commissioner Dunn in Lea County State District Court."  *Id.* at 10.  Several months after filing the State Court lawsuit, in May 2018, Plaintiffs "sent Commissioner Dunn [a] letter … requesting that the [New Mexico State Land Office] issue [Plaintiffs] 11 pending easements" and other land interests.  *Id.* at 12.  Despite Plaintiffs' efforts, the Commissioners refused to grant any further land rights to RWO or Loco Hills after initiation of their State Court lawsuit.  *Id.*

Under Plaintiffs' recitation of the facts, the Commissioners refused to conduct business with Ray Westall *before* Plaintiffs filed their initial lawsuit.  *See id.* at 9-12.  Ordinarily, "the occurrence of the adverse [] action prior to the alleged protected activity renders a plaintiff unable to bring a retaliation claim."  *Hindman v. Thompson*, 557 F.Supp. 2d 1293, 1305 (N.D.

Okla. 2008) (evaluating retaliation claim under Title VII) (citing *inter alia Hill v. Steven Motors, Inc.*, 97 Fed.Appx. 267, 280 (10th Cir. 2004)).  However, "action taken against an individual in anticipation of that person engaging in protected opposition … is no less retaliatory than action taken after the fact."  *Sauers v. Salt Lake Cnty.*, 1 F.3d 1122, 1128 (10th Cir. 1993).

There is evidence that Plaintiffs suggested they would engage in the protected activity of seeking judicial redress before they filed their initial lawsuit.  *See* (Doc. 8) at 10 (explaining that beginning in August 2017, "Loco Hills disputed the demanded sums … because … [it] believed the charges violated the equal protection clause and due process").  These facts, taken as true, demonstrate that the Commissioners could have plausibly denied Plaintiffs' easement rights because they were threatening litigation and alleging the Commissioners' conduct was violative of the Constitution.  *See id.* (asserting constitutional deprivations beginning in August 2017 and filing suit in October 2017).  As a result, Plaintiffs facially demonstrate that the Commissioners' refusal to grant further lease rights may have been "substantially motivated" by their filing of the first lawsuit, or, alternatively, the earlier threat of litigation.

Therefore, Plaintiffs proffer sufficient facts to facially support each of the elements necessary to allege a First Amendment retaliation charge.  Accordingly, in concluding that Plaintiffs sufficiently pled a violation of their constitutional rights, the Court must next address whether that right was clearly established to overcome the Commissioners' request for qualified immunity.  In determining whether clearly established law governed a defendant's conduct, a court must ascertain whether "the violative nature of *particular* conduct is clearly established."  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citing *al-Kidd*, 563 U.S. at 742) (emphasis in original).  The right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Id.* at 11.  While a case directly on point is not required,

"existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 12 (citing *al-Kidd*, 563 U.S. at 741).

The general "right to petition" has been recognized as a constitutionally protected right for millennia. *See e.g.*, *NAACP v. Button*, 371 U.S. 415, 455 (1963) (Harlan, J., dissenting) (opining that "State surely may not broadly prohibit individuals with a common interest from joining together to petition a court for redress of their grievances"); *McDonald*, 472 U.S. at 482 (explaining that "First Amendment guarantees 'the right of the people … to petition the Government for a redress of grievances'"). Specifically, even before ratification of the First Amendment, "in 1689, the Bill of Rights exacted of William and Mary stated: 'it is the Right of the Subjects to Petition the King.'" *McDonald*, 472 U.S. at 482. As such, the "values in the right of petition … are beyond question." *Id.* at 483.

At least one other district court, citing a Tenth Circuit case, *Worrell*, concluded that "[t]he law is clearly established … that retaliation for exercising constitutionally protected rights under the First Amendment to the Constitution which results in harm is violative of § 1983." *Nave v. Independent School Dist. No. 20 of LeFlore Cnty.*, 2018 WL 6419296, at *9 (E.D. Okla.) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). This Court is not convinced that *Worrell*, on its own, stands for such a broad proposition—clearly establishing retaliation claims in *all* First Amendment contexts. *See Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. at 742) (cautioning lower courts "not to define clearly established law at a high level of generality"). Indeed, in contrast to what occurred here, *Worrell* involved First Amendment claims alleging retaliation after the plaintiffs proffered adverse testimony in court against the defendant public officials. *See* 219 F.3d at 1212. However, the principles articulated in *Worrell*, in conjunction with subsequent Tenth Circuit cases that applied *Worrell*'s holding in a factual

context more akin to that at issue here, clearly establishes such a right on a more particularized level.  *See also Trant v. Oklahoma*, 754 F.3d 1158, 1169 (10th Cir. 2014) (holding that First Amendment retaliation claim against "defendant who is not the plaintiff's employer" governed by *Worrell* test); *Leverington v. City of Colo. Springs*, 643 F.3d 719, 729 (10th Cir. 2011) (applying "*Worrell* test [] to retaliation claims in which the defendant is not the plaintiff's employer and when there is no contractual relationship between them").

Most pointedly, the Tenth Circuit applied *Worrell* in a First Amendment retaliation claim alleged against county officials in Kansas, asserted after the plaintiffs sought redress for tax assessments levied on their property.  *Van Deelen v. Johnson*, 497 F.3d 1151, 1153 (10th Cir. 2007).  The *Van Deelen* court opined that "the constitutionally enumerated right of a private citizen to petition the government for the redress of grievances does not pick and choose its causes but extends to matters great and small, public and private."  *Id.*  Specifically, the Tenth Circuit explained that the right "to petition the government for the redress of tax grievances—has been with us and clearly established since the Sons of Liberty visited Griffin's Wharf in Boston." *Id.* at 1158.  As a result, Judge—now Justice—Gorsuch denied qualified immunity for the state officials and found that the plaintiffs' First Amendment retaliation claim was clearly established. *Id.*

Importantly, *Van Deelen* applied the First Amendment retaliation test from *Worrell*, and the principles asserted therein, to a private citizen's right to petition the government for redress of grievances.  *See Klen v. City of Loveland, Colo.*, 661 F.3d 498, 509 (10th Cir. 2011) (explaining that "*Van Deelen* borrows its First Amendment retaliation test from *Worrell*, a case that involved alleged retaliation for testimony in court rather than for a petition addressed to the government") (citing *Van Deelen*, 497 F.3d at 1155-56; *Worrell*, 219 F.3d at 1200); *see also*

*Glover v. Mabrey*, 384 Fed.Appx. 763, 774 (10th Cir. 2010) (explaining that "[i]n *Van Deelen v.*

*Johnson*, [Tenth Circuit] reversed the district court's dismissal of a private citizen's § 1983 claim

alleging county authorities retaliated against him for filing a lawsuit").  Subsequently, in again

denying qualified immunity to state officials, the Tenth Circuit applied its holding from *Van*

*Deelen* in *Klen*, and opined that it was "clearly established … that non-employee speech [or

petition] addressing a private matter was protected by the First Amendment."  661 F.3d at 511.

Notably, *Klen* similarly involved retaliation claims against city officials for the plaintiffs'

exercise of their First Amendment rights after the defendants frustrated their ability to secure

land-use permits.  *Id.* at 501-03 (explaining that "[p]laintiffs' claims arose out of their attempts to

obtain a building permit from the City").

The conduct and rights addressed, and rendered "clearly established" in both *Van Dellen*

and *Klen*, are strikingly similar to those at issue here: complaints asserted against city and county

officials alleging they engaged in retaliatory conduct after the plaintiffs petitioned for redress or

otherwise exercised their First Amendment rights.  In addition, both cases invoked First

Amendment principles related to private citizens and their concerns over state-issued property

rights and permitting.  As a result, based on *Klen* and *Van Deelen*—and the more general

framework set forth in *Worrell* dovetailing with the age-old principles articulating a citizen's

right to petition the government for redress of grievances—a reasonable official in the

Commissioners' position would have known that that their conduct ran afoul of the Constitution.

*See Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018) (explaining that "clearly established law" is

required to give "fair and clear warning" to government officials that their conduct is

unconstitutional).  Both *Van Deelen* and *Klen* clearly establish such a right in parallel contexts,

affording adequate notice and clearly establishing that the conduct here, when viewed in the light most favorable to Plaintiffs, was unconstitutional in 2017.

In conclusion, the Court holds that Plaintiffs' right to be free from retaliation in violation of the First Amendment was clearly established.  Furthermore, Plaintiffs assert a plausible showing that their First Amendment rights were violated, and, thus, they survive judgment on the pleadings for this claim.  Therefore, the Commissioners are not entitled to qualified immunity at this stage, and Plaintiffs' First Amendment retaliation claim shall remain pending against the Commissioners in their individual capacities.

### E.  *Unconstitutional Conditions*

Finally, the Commissioners request judgment on the pleadings for Plaintiffs' unconstitutional conditions claims.  (Doc. 35) at 10; (Doc. 38) at 8-10.  The doctrine of unconstitutional conditions "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up."  *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013).  In practice, the government is forbidden "from denying or terminating a benefit because the beneficiary has engaged in constitutionally protected activity." *Petrella v. Brownback*, 787 F.3d 1242, 1265 (10th Cir. 2015) (citing *Koontz*, 570 U.S. at 604). Importantly, the "doctrine only applies if the government places a condition on the exercise of a constitutionally protected right."  *Id.* (citing *Reedy v. Werholtz*, 660 F.3d 1270, 1277 (10th Cir. 2011)).  Thus, "the focus of the unconstitutional conditions doctrine is on whether a governmental entity is denying a benefit to [p]laintiffs that they could obtain by giving up their [constitutional rights], or is penalizing them for refusing to give up their [] rights."  *KT.&G Corp. v. Attorney General of State of Okla.*, 535 F.3d 1114, 1136 (10th Cir. 2008).

In their Complaint, Plaintiffs posture a claim for "unconstitutional condition of association and/or surrender of rights." (Doc. 8) at 40. Specifically, Plaintiffs allege that the Commissioners refused to grant additional land-use permits because Plaintiffs "associated with Loco Hills and/or Ray Westall," exercised their constitutional rights to "access the courts," and alleged "equal protection and due process" violations. (Doc. 30) at 24; (Doc. 35) at 8-9. As noted above, Plaintiffs do not allege valid claims under the First Amendment right to associate or the Fourteenth Amendment equal protection clause. *See supra* §§ (II)(B), (C). Thus, the only valid rights which Plaintiffs may proffer to support their unconstitutional conditions claim are the right to due process and the right to access the courts. Absent allegations that an underlying constitutional right has been jeopardized, "no claim for unconstitutional conditions can be sustained." *Reedy*, 660 F.3d at 1277.

First, Plaintiffs allege their unconstitutional conditions claim can be premised on an underlying "takings clause" due process violation. (Doc. 35) at 8. The Fifth Amendment Takings Clause "provides that private property shall not 'be taken for public use, without just compensation.'" *Lingle v. Chevron*, 544 U.S. 528, 536 (2005). Specifically, the "paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Id.* at 537. The touchstone of any takings clause claim is the "government directly appropriat[ing] private property or oust[ing] the owner from his domain." *Id.* at 539. Here, however, the issue is not the State's taking of Plaintiffs' property. Rather, the land Plaintiffs allege that was "taken" is owned by the State. Plaintiffs seemingly argue a taking nonetheless occurred and cite to *Koontz* in support. (Doc. 30) at 10-11; (Doc. 37) at 7-9 (citing *Koontz*, 570 U.S. at 605).

*Koontz* described cases that "involve a special application of … the Fifth Amendment right to just compensation" and the interplay between the Fifth Amendment and the doctrine of unconstitutional conditions "for property the government takes when owners apply for land-use permits."  570 U.S. at 604-05.  However, in *Koontz*, the Fifth Amendment "taking" still involved the government's coercive taking of privately-owned land.  *Id.* at 605-06.  Simply stated, absent ownership of the land in question, there can be no Fifth Amendment taking.  *Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994) (reciting text of the Fifth Amendment Takings Clause: "Nor shall private property be taken for public use, without just compensation").  Thus, here, there can be no allegation of "taking" when the land simply was not Plaintiffs to take.  Despite Plaintiffs' contestations, neither *Koontz*, nor its progeny, holds to the contrary.

Next, Plaintiffs allege that their unconstitutional conditions claim is premised on their right to access the courts.  (Doc. 8) at 42.  Plaintiffs' blanket assertion of their right to "access the courts" raises similar concerns as those addressed with their First Amendment right to associate claims, *see supra* § (II)(B).  From Plaintiffs' Complaint, it is unclear whether they intend to assert Fourteenth Amendment "access to the court" claims under the framework of a denial of substantive due process, or First Amendment access to the court claims, akin to their claims for their right to seek redress for grievances.  (Doc. 8) at 42 (asserting a bald right to "access the courts").

Regardless of the exact contours of their alleged claims, however, Plaintiffs cannot withstand a qualified immunity defense by passing reference to a constitutional right.  At a minimum, Plaintiffs must allege the constitutional amendment for which they premise their Section 1983 claim.  *See Robbins*, 519 F.3d at 1253 (finding complaint suffers from "notice and plausibility problems" when it "encompasses a broad range of imaginable circumstances, only

24

some of which, if any, would entitle the plaintiffs to relief and therefore, 'stops short of the line between possibility and plausibility of entitlement to relief'").  Indeed, the contours of Plaintiffs' right to access the court, for which they claim "unconstitutional conditions," are not sufficiently definite to withstand judicial review.  *See City and Cnty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *al-Kidd*, 563 U.S. at 741) (explaining that for right to be clearly established, "right's contours [must be] sufficiently definite that any reasonable official … would have understood that he was violating it").

In conclusion, Plaintiffs cannot demonstrate an underlying constitutional deprivation upon which they may premise their "unconstitutional conditions" claims.  Principally, Plaintiffs fail to allege plausible facts to sufficiently assert a viable Fifth Amendment taking, or a violation of their right to access the courts.  As a result, Plaintiffs have not established that the Commissioners violated their constitutional rights.  For these reasons, Commissioner Richard and former Commissioner Dunn are entitled to qualified immunity on Plaintiffs' unconstitutional conditions claims.

## IV.   Conclusion

In sum, Plaintiffs voluntarily forfeited their claims for "impairment of contracts" against both Commissioners Dunn and Richard in their individual capacities.  (Doc. 37) at 32.  As a result, this claim remains pending solely against Commissioner Richard in her official capacity. Furthermore, Plaintiffs failed to allege sufficient facts to plausibly support claims under the Fourteenth Amendment equal protection clause, First Amendment right to association, and "unconstitutional conditions."  *See supra* §§ (II)(B), (C), (E).  Defendant Commissioners Dunn and Richard are, therefore, entitled to qualified immunity on each of these claims.  Lastly, Plaintiffs allege sufficient factual support to defeat judgment on the pleadings, and the

Commissioners' request for qualified immunity, on their First Amendment retaliation claims. Thus, Plaintiffs' First Amendment retaliation claim remains, at this stage in the proceedings, as the only viable claim pending against Commissioners Richard and Dunn in their individual capacities.

IT IS, THEREFORE, ORDERED that

1. Defendant Commissioners' Motions for Judgment on the Pleadings (Docs. 21, 32), are granted in part and denied in part;

2. Judgment is entered in favor of Defendant Commissioners Richard and Dunn on all claims in their individual capacities *except* Plaintiffs' claim alleging retaliation for redress of grievances under the First Amendment; and

3. All claims against Defendant Commissioner Richard in her official capacity, not challenged in the present Motions, remain pending.

UNITED STATES DISTRICT JUDGE