IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAY WESTALL OPERATING, INC.,
DONNIE MATHEWS, JAMES R. MALONEY,
RAY WESTALL, and KAREN WESTALL,

       Plaintiffs,

vs.                                          No. CV 20-302 KG/GJF

STEPHANIE GARCIA RICHARD, *individually and*
*in her official capacity as New Mexico Commissioner*
*of Public Lands*, and AUBREY DUNN, JR., *individually*,

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

       Presently before the Court are Plaintiffs' Motion for Preliminary Injunction and Brief in Support Thereof (Plaintiffs' Motion) (Doc. 9), and Defendant Commissioner Stephanie Garcia Richard's Motion to Amend Answer (Commissioner's Motion) (Doc. 22).  The Motions are now fully and timely briefed.  *See* (Docs. 11, 31, Responses, and Docs. 13, 33, Replies).  The Court notes jurisdiction under 28 U.S.C. § 1331, as an action arising under 42 U.S.C. § 1983.  Having considered the parties' briefing, the record, and the relevant law, the Court denies Plaintiffs' Motion (Doc. 9) and grants the Commissioner's Motion (Doc. 22).

       The Court set forth the facts of this case in its recent Memorandum Opinion and Order (Doc. 43), disposing of the Commissioners' Motions for Judgement on the Pleadings (Docs. 21, 32).  For purposes of the present motions, Plaintiffs allege that the Commissioners prohibited them from leasing land-use rights on New Mexico state trust land after their sister company, also owned in-part by Plaintiff Ray Westall, allegedly failed to pay its required royalties.  (Doc. 1) at 2-11.  Plaintiffs claim that the Commissioners' refusal to grant or extend their lease agreements

violated their constitutional rights.  *Id.* at 33.  In response, Commissioner Richard asserts that

Plaintiff Ray Westall's refusal to pay his required royalties justified her denial of Plaintiffs'

applications for additional or extended land-use rights on New Mexico state trust land.  (Doc. 11)

at 1-2.  As a result, the Commissioner contests the merits of Plaintiffs' constitutional claims, and

requests leave to amend her Answer to assert counterclaims against Ray Westall for his willful

default.  (Doc. 22) at 1-3.

In its recent Memorandum Opinion and Order, this Court concluded that the

Commissioners were entitled to judgment on the pleadings for Plaintiffs' claims of impairment

of contracts, unconstitutional conditions, and alleged violations of their First Amendment right to

associate and Fourteenth Amendment right to equal protection under the law.  (Doc. 43).  In

pertinent part, the Court concluded that Plaintiffs' Complaint failed to assert cognizable harm to

support liability against the Commissioners in their individual capacities and, thus, awarded them

qualified immunity on four of Plaintiffs' five claims.  *Id.*  However, the Court concluded that

Plaintiffs' claim for First Amendment retaliation withstood judicial scrutiny and denied the

Commissioners' request for qualified immunity on those grounds.  *Id.*  This claim, therefore,

remains pending against the Commissioners in their individual capacities.  *Id.*

I.       *Plaintiffs' Motion for Preliminary Injunction*

In their Motion, Plaintiffs request a preliminary injunction enjoining the Commissioner

from: (1) "[s]eeking to or actually excluding Plaintiff [Ray Westall Operating, Inc.] RWO from

utilizing [specific] easements;" (2) "[t]erminating, cancelling, or failing to renew the easements

and [*sic*] rights-of way;" (3) and "[i]nitiating, seeking, or otherwise participating in any criminal

prosecution of Plaintiffs for trespass related to their use of the easements and rights-of-way."

(Doc. 9) at 2.  In response, the Commissioner contends that the individual Plaintiffs lack standing

to maintain this action.  (Doc. 11) at 8-9.  Furthermore, the Commissioner argues that Plaintiffs fail to proffer evidence warranting the issuance of a preliminary injunction and, thus, she urges this Court to deny Plaintiffs' extraordinary request for relief.  *Id.* at 7-24.

To prevail on a preliminary injunction, a plaintiff must show that: "(1) it has a substantial likelihood of prevailing on the merits; (2) it will suffer irreparable injury if it is denied the injunction; (3) its threatened injury outweighs the injury that the opposing party will suffer under the injunction; and (4) an injunction would not be adverse to the public interest."  *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1283 (10th Cir. 1996).  If the moving party satisfies elements two, three, and four, "the movant may satisfy requirement [one] by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation."  *Fed. Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1195 (10th Cir. 1999) (abrogated on substantive due process grounds by *Onyx Prop., LLC v. Board of Cnty. Comms. of Elbert Cnty.*, 838 F.3d 1039, 1043 n.3 (10th Cir. 2016)).  Given the "extraordinary remedy" granted by a court's issuance of a preliminary injunction, "the [movant's] right to relief must be clear and unequivocal."  *Chemical Weapons Working Group, Inc. v. U.S. Dep't of the Army*, 111 F.3d 1485, 1489 (10th Cir. 1997).

Furthermore, "courts 'disfavor' some preliminary injunctions and so require more of the parties who request them."  *Free the Nipple–Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019) (citation omitted).  "Disfavored preliminary injunctions don't merely preserve the parties' relative positions pending trial."  *Id.*  Rather, "a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a

3

trial win." *Id.* "To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: [it] must make a strong showing that these tilt in [its] favor." *Id.* (quotations omitted).

### A.  Standing

As a preliminary matter, the Commissioner asserts that the individual Plaintiffs—Ray Westall, Karen Westall, James Maloney, and Donnie Mathews—lack standing to request a preliminary injunction before this Court.  (Doc. 11) at 8.  Specifically, the Commissioner explains that she never "entered into any contractual agreements with the Westalls as individuals, or with Maloney or Mathews." *Id.*  Rather, she contends that the New Mexico State Land Office only conducted business with Plaintiff RWO. *Id.*  The Commissioner, therefore, argues that any conduct which harmed RWO did not confer standing on the Westalls as shareholders or Maloney and Mathews as joint venturers. *Id.* at 8-9.  In response, Plaintiffs argue that they maintain a "personal interest" in this lawsuit and may, therefore, participate as individuals.  (Doc. 13) at 4.  As a result, Plaintiffs ask the Court to conclude that they have standing to request relief. *Id.*

Generally, shareholders are prohibited "from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Grubbs v. Bailes*, 445 F.3d 1275, 1280 (10th Cir. 2006).  However, shareholder standing has a "well-established exception, 'allowing a shareholder with a *direct, personal interest* in a cause of action to bring suit even if the corporation's rights are also implicated.'" *Id.* (citing *Franchise Tax Bd. Of Cal. v. Alcan Aluminum, Ltd.*, 493 U.S. 331, 336 (1990)) (emphasis in original).

In applying this exception, the Tenth Circuit concluded that individual shareholders had a "direct, personal interest" in a claim where they owned a "possessory interest" in the

corporation's property; namely, where each shareholder was granted a parcel of the corporation's land for their free enjoyment as tenants. *Id.* at 1277, 1280-81 (explaining that "[i]f plaintiff's only connection with the property had been his ownership of [corporate] stock … such a purely derivative interest would fall within the scope of the prudential prohibition on shareholder standing"). On the other hand, the Tenth Circuit explained that when shareholders "merely assert [that they] … suffered a diminution in value of their corporate shares without receiving the same monetary compensation the majority shareholders received," their claims "are derivative of the corporation's." *Bixler v. Foster*, 596 F.3d 751, 757, 758 (10th Cir. 2010).

Perhaps most pointedly, the Tenth Circuit concluded that a stockholder lacked standing to sue on her own behalf when she alleged that the defendant discriminated against her and, in turn, refused to do business with her corporation. *Guides, Ltd. v. Yarmouth Group Prop. Manag., Inc.*, 295 F.3d 1065, 1072 (10th Cir. 2002). The Tenth Circuit explained that the corporation was the "direct victim of the alleged discrimination" because it was the party "seeking to contract with the defendants and to lease property." *Id.* As a result, the *Guides* court concluded that the individual plaintiff, although the one directly discriminated against, did not have standing to sue on her own behalf because her injury was merely derivative of the corporation's. *Id.* at 1072-73 (explaining that "economic damages" suffered by corporation and felt by stockholder were "derivative" and did not support standing for individual plaintiff).

In addition, while most invoked as "shareholder standing," the Tenth Circuit has recognized the application of the prudential standing requirement for guarantors and investors, "when the individuals' losses come about only because of the firm's loss." *Niemi v. Lasshofer*, 728 F.3d 1252, 1260 (10th Cir. 2013). Thus, although Plaintiffs Mathews and Maloney are "joint venturers," rather than shareholders, the principles of prudential standing equally apply.

*Accord Calderon v. City and Cnty. of Denver*, 2019 WL 4450199, at \*4 (D. Colo.) (concluding

that shareholder standing rule applies to "employee" of corporation, and not just "shareholders"

based on "broader principle" prohibiting third-party standing) (collecting cases).

  Here, the individual Plaintiffs suffered a derivative injury of RWO, rather than

particularized and individual harm from the Commissioner's actions.  Specifically, in their

Complaint, Plaintiffs explain that "[t]he individual Plaintiff joint venturers rely on the operating

company, RWO, to operate and run the [] distribution system."  (Doc. 8) at 4.  Plaintiffs further

explain that "RWO initially incurs the expenses on the operations and collects the revenues, but

then distributes all expenses and profits (minus overhead and pumping charges) to the individual

joint venture owners, including Plaintiffs Mathews, Maloney and Ray and Karen Westall."  *Id.* at

5.  These statements evidence that the individual Plaintiffs were only harmed through the

Commissioner's actions towards RWO, and its effective "blacklisting" of RWO from executing

and extending lease rights.

  As a result, the Court finds that the individual Plaintiffs—Ray and Karen Westall, Donnie

Mathews, and James Maloney—lack standing to sue on their own behalf.  Rather, on the facts

presented, the individual Plaintiffs' economic injury is merely derivative of RWO's and, thus,

does not afford them a basis to allege that the Commissioners' actions violated their

constitutional rights.  For these reasons, the Court will dismiss Plaintiffs Ray and Karen Westall,

Donnie Mathews, and James Maloney without prejudice, and will proceed with RWO as the

remaining Plaintiff.

### B.  Merits of Plaintiffs' Preliminary Injunction Motion

Turning to the merits of Plaintiffs' request for a preliminary injunction, the parties first dispute whether the requested relief is among that "disfavored" and, thus, whether Plaintiffs' claim should be subjected to a higher standard.  *See* (Doc. 11) at 6-10; (Doc. 13) at 5.  However, regardless of whether the "heightened standard" attaches to Plaintiffs' claim for injunctive relief, Plaintiffs have failed to satisfy the lower threshold for "typical" preliminary-injunction questions.  *See Free the Nipple-Fort Collins*, 916 F.3d at 797 (distinguishing between "typical" preliminary injunction standard and "heightened standard" for "disfavored" injunctive requests).  As a result, this Court declines to consider whether the requested injunction falls within one or more of the "disfavored" categories.  *Accord Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016) (declining "to reach the question of whether the heightened standard for disfavored preliminary injunctions applies [because] even assuming *arguendo* that the heightened standard applies, the Plaintiffs[] meet that standard").  Simply stated, Plaintiffs' request for a preliminary injunction cannot survive under the lesser standard of relief and, thus, likewise fails under the heightened one.

### 1. Likelihood of Success

Under the first prong, "[a]lthough '[t]he courts use a bewildering variety of formulations of the need for showing some likelihood of success,' … '[a]ll courts agree that plaintiff must present a *prima facie* case but need not show a certainty of winning.'"  *Coal. of Concerned Citizens to Make Art Smart v. Fed. Transit Admin. of U.S. Dep't of Trans.*, 843 F.3d 886, 901 (10th Cir. 2016) (citation omitted).  At the preliminary injunction stage, "the burden is upon the one requesting such relief to make a *prima facie* case showing a reasonable probability that he will ultimately be entitled to the relief sought."  *Automated Marketing Sys., Inc. v. Martin*, 467

F.2d 1181, 1183 (10th Cir. 1972) (quoting *Crowther v. Seaborg*, 415 F.2d 437 (10th Cir. 1969),

defining "necessary showing to obtain a preliminary injunction"); *see also Continental Oil Co. v.

Frontier Refining Co.*, 338 F.2d 780, 781 (10th Cir. 1964) (explaining preliminary injunction

"should be issued only where the plaintiff makes out a *prima facie* case showing a reasonable

probability that he will ultimately be entitled to the relief sought").

In large part, the Court reviewed the merits of Plaintiffs' claims against the individual

Commissioners in its Memorandum Opinion and Order (Doc. 43).  Notably, the Court concluded

that Plaintiffs asserted only one viable *prima facie* claim:  First Amendment retaliation.  (Doc.

43) at 14-22.  In reaching this conclusion, the Court repeatedly noted that it was "taking all facts

in the light most favorable to Plaintiffs," and assessing whether it was merely "plausible" that

Plaintiffs could establish a First Amendment violation.  *Id.*  The Court explained that, under this

standard, Plaintiffs failed to demonstrate that their other causes of action had a viable basis for

relief.  *Id.*  As a result, the Court granted the Commissioners' request for qualified immunity on

Plaintiffs' claims for equal protection, "unconstitutional conditions," impairment of contracts,

and their First Amendment right to associate.  *Id.* at 26.

Based on the analysis set forth at length in the Memorandum Opinion and Order (Doc.

43), this Court is not convinced that Plaintiffs have demonstrated that any of their claims are

likely to succeed on the merits, in order to satisfy the first required showing for a preliminary

injunction.  Regardless of the strength of Plaintiffs' remaining claims, however, their request for

a preliminary injunction also fails on the second element, requiring proof of irreparable harm.

### 2. Irreparable Harm

A plaintiff's "showing of probable irreparable harm is the single most important

prerequisite for the issuance of a preliminary injunction."  *DTC Energy Grp., Inc. v. Hirschfeld*,

912 F.3d 1263, 1270 (10th Cir. 2018) (citation omitted).  In fact, "[t]he purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance."  *Id.* (citation omitted).  "To show a threat of irreparable harm, a plaintiff must demonstrate 'a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages.'"  *Fish*, 840 F.3d at 751 (citation omitted).

Also, irreparable harm "occurs if 'the district court cannot remedy [the injury] following a final determination on the merits.'"  *Id.* (citation omitted).  The Tenth Circuit has "held that irreparable harm 'does not readily lend itself to definition,' … and is 'not an easy burden to fulfill' …."  *Id.* at 751-52 (citations omitted).  However, ordinarily, "economic loss is [] insufficient to constitute irreparable harm."  *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011).  Indeed, absent exceptional circumstances, economic losses are compensable by monetary damages.  *See id.* at 1157-58 (finding financial harm sufficient to justify preliminary injunction when sovereign immunity would bar later entitlement to monetary damages); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (finding irreparable harm when plaintiff "would be deprived of control of its real property").

Plaintiffs allege the irreparable harm they would suffer in the absence of a preliminary injunction is the "severe[] impact" of RWO's "ability to meet the daily [customer] demand." (Doc. 8) at 25; *see also id.* at 27 (explaining that easements are "absolutely essential to service the expected demands from RWO's customers"); *id.* at 28 ("RWO simply cannot satisfy the expected and likely demand to dispose of produced water without the [easements]").  Plaintiffs explain that "cash is king for a small business" and, absent an injunction, their business would financially suffer from its loss of sales and potential clients.  *Id.* at 28.

Furthermore, Plaintiffs assert that if the Commissioners are not enjoined from terminating their easements, the economic damage and financial hardship they would suffer is incalculable. *Id.* However, Plaintiffs repeatedly quantify their anticipated damages, explaining that "RWO generally earns $1/barrel of disposed water [and] RWO will lose $1 for each barrel." *Id.* Plaintiffs further explain that "[b]ased on the monthly sales average of 700,000 barrels and the likely reduction of capacity down to less than 200,000 barrels per month, it is likely that failure to issue a temporary injunction will cost RWO losses of over $500,000 per month." *Id.*

The irreparable harm Plaintiffs allege is financial and, thus, ordinarily compensable through monetary damages. Likewise, Plaintiffs demonstrate that any lost revenue, clients, and sales are computable, based on comparisons of past and present sales figures. Plainly stated, Plaintiffs' computable and reparable monetary damages miss the mark on what is required to sustain injunctive relief. *See Crowe & Dunlevy, P.C.*, 640 F.3d at 1157 (explaining that "economic loss is usually insufficient to constitute irreparable harm").

Nevertheless, Plaintiffs claim a preliminary injunction is appropriate because sovereign and qualified immunity may inhibit them from seeking monetary damages against the Commissioners. (Doc. 8) at 30. In addition, Plaintiffs contend that because "real income-producing property" is at issue, injunctive relief is necessary to avoid irreparable harm. (Doc. 13) at 10. The Court rejects both arguments.

First, the Court already concluded that Defendant Commissioners Richard and Dunn are not entitled to qualified immunity on Plaintiffs' First Amendment retaliation claims. *See* (Doc. 43). As a result, calculable monetary remedies to redress Plaintiffs' harms remains achievable. Second, the "real income-producing property" at issue is not Plaintiffs' property and is, thus, distinguishable from the *RoDa* case they rely upon. Indeed, in *RoDa*, the Tenth Circuit

10

concluded that the plaintiff proved irreparable harm when it was "being denied *its* right to interest in *its* real property." *RoDa Drilling Co.*, 552 F.3d at 1211 (emphasis added).  The Tenth Circuit further explained that "*RoDa* has been denied unfettered ownership of that property … and the damages arising from that denial are incalculable." *Id.*  Plaintiffs are not being denied access to their own property.  Rather, the property they claim a "right" to access is under the control of the Commissioner and owned by the State of New Mexico.  Thus, Plaintiffs' reliance on *RoDa* is inapposite.  The "irreparable harm" Plaintiffs allege is simply not the type contemplated for the extraordinary remedy of injunctive relief.  *See also id.* (granting preliminary injunction based on denial of "unfettered ownership of [] property … and, *most importantly*, unquantifiable damages") (emphasis added).

### C.  Conclusion

In sum, the Court concludes that the individual Plaintiffs lack standing to participate in this lawsuit.  Furthermore, the Court concludes that Plaintiffs failed to allege facts that sufficiently prove satisfaction of the first two requirements to warrant a preliminary injunction.  For these reasons, the Court denies Plaintiffs' Motion for a Preliminary Injunction (Doc. 9) and dismisses the individual Plaintiffs without prejudice.

### II.  Defendant Commissioner Richard's Motion to Amend Answer

Next, also before the Court is the Commissioner's Motion to Amend Answer (Doc. 22).  Federal Rule of Civil Procedure 15(a) directs that after a responsive pleading has been served, the defendant may amend their answer "only by leave of court or by written consent of the adverse party."  The Rule further directs that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).  The Tenth Circuit has interpreted Rule 15(a) to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on

procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).  However, leave to amend should not be granted if there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Commissioner requests to amend her Answer to add counterclaims against Plaintiffs arising from "the same types of contractual agreements" initially raised in Plaintiffs' Complaint. (Doc. 22) at 2.  In response to the Commissioner's Motion, Plaintiffs raise two arguments in opposition.  (Doc. 31) at 2-3.  First, Plaintiffs assert that the Commissioner agreed to not prosecute her case against Plaintiffs until after the Court decides their Motion for Preliminary Injunction (Doc. 9).  *Id.* at 2 (claiming Commissioner's current attempt to amend Answer and add counterclaims in direct violation of parties' written agreement).  Second, Plaintiffs assert that the Commissioner seeks leave to amend for an "improper purpose," and the proffered counterclaims are "frivolous."  *Id.* at 3.  Therefore, Plaintiffs urge the Court to deny the Commissioner's requested relief.  *Id.*

At this juncture, Plaintiffs' first argument, regarding the resolution of the preliminary injunction, is now moot.  The Court herein denies Plaintiffs' Motion for Preliminary Injunction (Doc. 9) and, thus, any concerns surrounding the parties' alleged agreement are no longer relevant.  Second, Plaintiffs' assertion that the Commissioner's request to amend is for an "improper purpose" and "frivolous" is equally without merit.  *See* (Doc. 31) at 3.

Indeed "[t]he party contesting the motion to amend has the burden of proving that the amendment should be refused on one of these bases."  *Openwater Safety IV, LLC v. Great Lakes*

*Ins. SE*, 435 F.Supp. 3d 1142, 1151 (D. Colo. 2020) (citing *Acker v. Burlington N. & Santa Fe R. Co.*, 215 F.R.D. 645, 654 (D. Kan. 2003)); *see also Corp. Stock Transfer, Inc. v. AE Biofuels, Inc.*, 663 F.Supp. 2d 1056, 1061 (D. Colo. 2009).  A proposed amendment is "futile" if it would be subject to dismissal; such as, it is barred by the statute of limitations, it fails to allege all elements of a cause of action, or the relief requested is prohibited by statute.  *See Openwater Safety IV, LLC*, 435 F.Supp. 3d at 1151 (collecting cases); *see also Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (finding proposed amendment "futile" because it was "barred by the statute of limitations" and thus "subject to dismissal").  Ultimately, "the grant or denial of an opportunity to amend is within the discretion of the District Court."  *Foman*, 371 U.S. at 182.

Here, in their two-page response to the Commissioner's Motion, Plaintiffs do not explain, or cite any legal authority directing this Court to an explanation, why the Commissioner's proposed amendment is futile.  *See* (Doc. 31) at 2-3.  Rather, Plaintiffs merely contest the merits of the Commissioner's counterclaims, arguing "[t]he Commissioner's claim that RWO defaulted on the easements is entirely frivolous."  *Id.* at 3; *id.* at 2 (explaining that they "do not dispute the general authority of the Commissioner to amend her answer to state valid, compulsory counter-claims, if she has them.").  However, proof that the proposed answer asserts winning counterclaims, rather than merely viable and colorable claims appropriately subject to this Court's purview, is plainly not contemplated by Rule 15 or the cases interpreting it.  Simply stated, whether Plaintiffs "agree" with the merits of the Commissioner's contentions, as introduced in their amended Answer, is wholly outside the scope of the Court's inquiry at this stage.

In conclusion, Plaintiffs have failed to demonstrate that the Commissioner's request to amend her Answer should be denied.  Rather, Plaintiffs' conclusory allegations of frivolousness,

absent any legally recognizable basis or citation in support, are insufficient to defeat the Commissioner's Motion.  For these reasons, the Court grants the Commissioner's Motion to Amend Answer (Doc. 22) and grants leave of Court for her to file the amended Answer on the record.

III.     Conclusion

Based on the foregoing, the Court concludes that the individual Plaintiffs lack standing to sue on their own behalf.  In addition, the Court determines that Plaintiffs failed to satisfy the first two elements necessary to warrant their entitlement to a preliminary injunction.  Finally, the Court concludes that the Commissioner's request to amend her Answer is neither frivolous nor for an improper purpose.

IT IS, THEREFORE, ORDERED that

1. Plaintiffs Karen Westall, Ray Westall, Donnie Mathews, and James Maloney are dismissed from this action without prejudice;

2. Plaintiffs' Motion for Preliminary Injunction (Doc. 9) is denied; and

3. Defendant Commissioner's Motion to Amend Answer (Doc. 22) is granted.


_____

UNITED STATES DISTRICT JUDGE